## VELEZ v. CAMACHO ET AL.

APELACIÓN procedente de la Corte de Distrito de

Mayagüez.

No. 148. Resuelto en Febrero 14, 1905.

CONTRATOS.—COMPRA-VENTA.—CONSENTIMIENTO EN EL PRECIO Y EN LA COSA.—OTORGAMIENTO DE DOCUMENTO PÚBLICO. El contrato de compra-venta, siendo consensual, queda perfeccionado por el consentimiento de las partes en. el precio y en la cosa, aunque ésta no se haya entregado, y los preceptos legales que se refieren al otorgamiento de escrituras públicas para la trasmisión del dominio de bienes inmuebles, no varían la naturaleza de dicho contrato, ni establecen una condición esencial del mismo, sino una forma en interés público, independiente de la voluntad de los contratantes, que quedan obligados á prestarse al otorgamiento de la escritura pública.

DOCUMENTO PÚBLICO.—ACTUACIONES JUDICIALES. Las actuaciones judiciales tienen el carácter de documento público.

ANOTACIÓN PREVENTIVA.—REQUISITO PARA QUE SURTA EFECTO LEGAL.—DERECHO PREFERENTE.—TERCERO. Para que la anotación preventiva surta efecto legal es condición precisa que los bienes sobre que se constituya no sean de un tercero, sino del mismo deudor, á fin de que el derecho por ella asegurado pueda gozar de preferencia sobre otros créditos contraidos con posterioridad á dicha anotación.

ID.—EFECTOS DE LA ANOTACIÓN.—CRÉDITOS POSTERIORES. La anotación preventiva de un embargo, acordada por providencia judicial y dirigida únicamente á garantir las consecuencias del juicio, no crea, ni declara, derecho alguno, no altera tampoco la naturaleza de las obligaciones, ni puede convertir en real é hipotecaria la acción que carezca de este carácter, no produciendo otros efectos que los de dar preferencia al acreedor que la obtenga, sólo en cuanto á los bienes anotados, sobre los que tengan contra el mismo deudor, otros créditos contraídos con posterioridad á dicha anotación.

ID.—TERCERO.—INSCRIPCIÓN.—CRÉDITO PERSONAL. A los efectos de la Ley Hipotecaria, el carácter de tercero ha de apreciarse con referencia á las inscripciones y anotaciones, con relación estas últimas á los créditos contraídos con posterioridad al crédito personal que garantice la primera anotación verificada en el Registro.

ID.—ANOTACIÓN DE EMBARGO. Las anotaciones de embargo practicadas en bienes del deudor no pueden perjudicar el derecho de dominio que sobre los mismos bienes hubiere adquirido un tercero con anterioridad á dicha anotación, por virtud de un contrato de compra-venta *perfeccionado con arreglo á ley*, aunque á la fecha de tal anotación no se hubiere cumplido la formalidad de llevar dicho contrato á escritura pública.

ID.—Las disposiciones del Art. 44 de la Ley Hipotecaria son perfectamente compatibles con las del inciso primero del art. 71 del mismo cuerpo legal.

ID.—TERCERÍA.—DERECHOS DE LAS PARTES.—COMPRA-VENTA.—ENTREGA DE LA FINCA. La cuestión á discutir y resolver en un pleito de tercería de dominio, se reduce á determinar los derechos que tengan las partes sobre la finca en litigio, tal y como aparezcan de los autos, sin que pueda discutirse si el comprador ó tercerista adquirió, ó no, derecho real sobre la finca, por no habérsele entregado.

ID.—CONSUMACIÓN DEL CONTRATO DE COMPRA-VENTA. Perfeccionado un contrato de compra-venta, por el convenio de las partes en la cosa y en el precio, queda obligado el vendedor á cumplirlo, siendo indiscutible el derecho del comprador para disfrutar del dominio de la finca y para reivindicarla, y en este concepto, no se infringe el art. 1095 del Código Civil, al negar eficacia legal, contra los derechos de tal comprador, á una anotación preventiva tomada con posterioridad á la consumación del contrato.

ID.—ACCIÓN PERSONAL.—OTORGAMIENTO DE ESCRITURA PÚBLICA. La acción para obligar á una parte al otorgamiento de una escritura pública, es de carácter personal, y la anotación de la demanda en el Registro no surtiría efecto legal alguno, por no estar comprendida en ninguno de los casos señalados en el art. 42 de la Ley Hipotecaria.

COSTAS.—Las costas deben imponerse á la parte cuyas pretensiones hubieren sido totalmente desestimadas.

## EXPOSICIÓN DEL CASO.

En los autos seguidos en la Corte del Distrito de Mayagüez entre parte de la una, como demandante, Don Tomás Vélez y Vélez, propietario, vecino de Cabo Rojo, y de la otra como demandados Don Bernardo Camacho, vecino de Mayagüez y Don Sergio Berenguer y Acosta, industrial, en rebeldía, sobre tercería de dominio, autos pen-

dientes ante Nos á virtud del recurso de apelación interpuesto contra la sentencia pronunciada por la referida Corte de Distrito que copiada á la letra dice así: .

"SENTENCIA.—En la ciudad de Mayagüez á primero de Abril de mil novecientos tres. Visto en juicio oral y público este pleito civil seguido entre partes, de la una como demandante Don Tomás Vélez y Vélez, propietario, vecino de Cabo Rojo, representado y defendido por el Letrado Don José de Diégo, y como demandados, Don Bernardo Camacho, vecino de esta Ciudad, defendido por el Abogado Don Francisco Pelegrí, y Don Sergio Berenguer y Acosta, industrial, vecino de Cabo Rojo, en rebeldía en estos autos, sobre tercería de dominio de un cuerpo de terreno.

1ro.—Resultando: que el ocho de Septiembre de mil novecientos uno, Don Tomás Vélez y Vélez compró á Don Sergio Berenguer y Acosta, en la suma de doscientos pesos oro, cien cuerdas de terreno radicadas en el barrio de Boquerón, de dicho término municipal, colindantes por el Norte con el salitral perteneciente á Don Alberto del Toro, por el Este con finca de la Sucesión de Don Federico Vélez, por el Sud con terrenos de Don Rafael Blanes y por el Oeste con tierras de Don Carlos Jofre y Palmer, y por no haberle otorgado la escritura pública, le demandó ante el Juzgado de Cabo Rojo, Vélez á Berenguer, para que así lo hiciera, el quince de Enero del pasado año 1902, y seguido el juicio sus trámites, dictó sentencia el Tribunal Municipal, el primero de Febrero del propio año, condenando al demandado á que otorgase en el término que se le fijó, el documento público referente al contrato de compra-venta de terrenos, entre ellos celebrado, mediante la entrega por el demandante de los cien pesos oro que tenía en su poder como resto de los doscientos pesos en que se verificó la enagenación del inmueble, y cuyo fallo fué confirmado con las costas por esta Corte de Distrito, el veinte y tres de Mayo de aquel año.

2do.—Resultando: que Don Bernardo Camacho, en diligencias preparatorias de ejecución contra Don Sergio Berenguer, solicitó embargo preventivo sobre cien cuerdas de terreno radicadas en el barrio de Boquerón, que pertenecían á su deudor el Señor Berenguer, y pidió que se tomase anotación preventiva del embargo en el Registro de la Propiedad de San Germán, como así se hizo el catorce de Marzo del próximo pasado año.

3ro.—Resultando: que el diez y ocho de Agosto del propio año 1902, el Juez Municipal de Cabo Rojo Don Tomás M. Marini y Ramírez, en rebeldía Don Sergio Berenguer y Acosta, vendió la finca aludida

á Don Tomás Vélez y Vélez, por el precio de doscientos dollars, de los cuales ciento tenía recibidos el Señor Berenguer según aparecía de los autos de juicio verbal, y los cien dollars restantes los consignaba en poder del Juez el comprador, todo lo cual se verificaba en cumplimiento de las sentencias dictadas por los Tribunales.

4to.—Resultando: que fundado en lo expuesto, Don Tomás Vélez y Vélez, citando los artículos 348, 349, 353 y siguientes, 1450 y 1251 del Código Civil, las sentencias del Tribunal Supremo de España, de 13 de Abril de 1880 y 11 de Marzo de 1884, los artículos 920 y concordantes, 1533 y 1541 de la Ley de Enjuiciamiento Civil, y la regla 63 de la Orden No. 118 serie de 1899, solicitó que en definitiva, previos los debidos trámites, se declarase con lugar la demanda de tercería de dominio interpuesta, y en su consecuencia, que los bienes y sus frutos recolectados y pendientes pertenecen al demandante, y deben quedar á su libre disposición, alzándose el embargo referido, y disponiéndose que se cancele en el Registro de la Propiedad la anotación correspondiente.

5to.—Resultando: que Don Bernardo Camacho pidió que se desestimase la demanda de tercería, declarándose sin lugar, absolviéndosele de la misma, y mandando que se alzase la suspensión del procedimiento de apremio seguido contra Don Sergio Berenguer, con imposición de costas al tercerista Don Tomás Vélez y Vélez, y á Don Sergio Berenguer en el caso de que impugnara la contestación, y para ello alegó, que el día quince de Marzo de 1901, Don Sergio Berenguer otorgó á favor de Don Bernardo Camacho, un documento privado en que confesaba deberle la cantidad de quinientos dollars, y prometía pagárselos el treinta y uno de Agosto del mismo año, cosa que no cumplió sino que anduvo en tratos con Don Tomás Vélez y Vélez para venderle una finca de cien cuerdas, únicos bienes inmuebles que poseía, y con cuya enagenación se hubiera quedado insolvente con perjuicio de su acreedor Don Bernardo Camacho, pero por temor quizá Berenguer á las responsabilidades en que pudiera incurrir, no otorgó escritura de venta de sus cien cuerdas de terreno á Don Tomás Vélez y Vélez, permitiendo que éste le demandara, y coadyuvó así á que el Tribunal le condenara á otorgar escritura de venta de dicho terreno, la que parece haberse otorgado de oficio el día diez y ocho de Agosto último; más al tener conocimiento Don Bernardo Camacho de las negociaciones de Vélez con Berenguer, determinó gestionar el cobro de su crédito por la vía judicial, y al efecto preparó ejecución, y despachada ésta se embargaron á instancia las cien cuerdas de terreno radicadas en el barrio de Boquerón, del término de Cabo Rojo, que pertenecían

á su deudor el señor Berenguer, anotándose en el Registro de la Propiedad de San Germán el catorce de Marzo de este año el embargo practicado sobre las indicadas cien cuerdas de terreno que pertenecían á Sergio Berenguer y estaban inscritas á su nombre en el Registro; y cinco meses después, ó sea el día veinte y dos de Agosto próximo pasado, se inscribió á favor de Don Tomás Vélez sin perjuicio de la referida anotación preventiva, la escritura de las mismas cien cuerdas de terreno, citando como puntos de su derecho el número 2do. del artículo 42 de la Ley Hipotecaria, los artículos 23, 25 y 43 del propio Cuerpo Legal, los artículos 606 y 1280 del antiguo Código Civil, y á más el artículo 71 de la dicha Ley Hipotecaria.

6to.—Resultando: que señalado día para una comparecencia después de haber sido acusada la rebeldía á Don Sergio Berenguer, y de habérsele notificado personalmente, las partes propusieron la prueba que estimaron procedente á su derecho, la cual admitió el Tribunal.

7mo.—Resultando: que se trajo á este pleito certificación de la sentencia dictada el primero de Febrero del pasado en el Juzgado Municipal de Cabo Rojo, certificación del Registro de la Propiedad de San Germán en que aparece la anotación del embargo pedido por Don Bernardo Camacho, y la inscripción á favor de Don Tomás Vélez y Vélez de la escritura de venta que le hizo el Juez Municipal de dicho pueblo en rebeldía de Don Sergio Berenguer y Acosta, y señalado día para juicio oral, los Letrados de las partes alegaron lo que creyeron oportuno, trayéndose luego para mejor proveer, certificación de la sentencia dictada por este Tribunal en el juicio seguido por Don Tomás Vélez y Vélez contra Don Sergio Berenguer y Acosta, sobre otorgamiento de escritura pública, y se votó luego la sentencia que recayó por mayoría.

8vo.—Resultando: que en el presente juicio se han cumplido todas las prescripciones de la ley.

Visto, siendo Juez Instructor para la redacción de esta sentencia el Sr. Juez Presidente Don Arturo Rodríguez.

1o.—Considerando: que siendo las anotaciones preventivas unos asientos que se hacen en el Registro de la Propiedad, para asegurar, provisionalmente, un derecho, en los casos y con las formalidades que determinan el artículo 42 de la Ley Hipotecaría y 91 y 92 de su Reglamento Orgánico, claro es que si entre esos casos se encuentra el que con arreglo á derecho, obtuviere á su favor mandamiento de embargo que se haya hecho efectivo en bienes raíces del deudor, se desprende natural y lógicamente que es condición para que surta efecto legal, que los bienes sobre que se constituye la anotación no sean de un ter-

cero, como lo es en este pleito Don Tomás Vélez y Vélez, respecto á Don Sergio Berenguer y Don Bernardo Camacho, sino del deudor mismo, para entonces gozar de preferencia con relación á otros créditos contraídos con posterioridad á dicha anotación.

2do.—Considerando: Que Don Bernardo Camacho solicitó embargo preventivo contra bienes de Don Sergio Berenguer, anotándose el constituído sobre cien cuerdas de tierra el catorce de Marzo del año próximo pasado, en cuya época ya habían sido vendidas por Don Sergio Berenguer esas tierras á Don Tomás Vélez y Vélez, siendo, objeto de reclamación judicial en dos distintas instancias, resolviéndose en ambas, que otorgara el vendedor la escritura al comprador, que lo es en este caso el tercerista; sin que pueda afirmarse que faltó el requisito de la escritura para el contrato, porque es bien sabido, que la compra-venta como consensual, se perfecciona por el consentimiento de las partes en el precio y en la cosa, y los preceptos legales que se refieren al otorgamiento de escrituras públicas para la transmisión del dominio de cosas inmuebles, no varían la naturaleza de dicho contrato, ni establecen una condición esencial del mismo, sino una forma en interés público, independiente de la voluntad de los contratantes, que quedan en su consecuencia, recíprocamente obligados á prestarse al otorgamiento de la escritura pública, según sentencia del Tribunal Supremo de España de 24 de Noviembre de 1894; esto aparte de que la demanda de Don Tomás Vélez contra Don Sergio Berenguer, se entabló con anterioridad al embargo, y con anterioridad también dictó el Juez Municipal la sentencia condenando al otorgamiento de la escritura, la cual no se ejecutorió en virtud de la apelación deducida para ante esta Corte, que confirmó la del Juez inferior, y esas actuaciones tienen el carácter de documentos públicos, según el artículo 1216 del Código Civil antiguo, en relación con el número 7mo. del artículo 595 del Código de Enjuiciamiento Civil.

3o.—Considerando: que según sentencias del Tribunal Supremo de Puerto Rico de primero de Noviembre de 1892, y 26 de Febrero de este año, la anotación preventiva de un embargo, acordada por providencia judicial, y dirijida únicamente á garantir las consecuencias del juicio, no crea ni declara derecho alguno, ni altera tampoco la naturaleza de las obligaciones, ni puede convertir en real é hipotecaria la acción que carezca de este carácter, y no produce otros efectos que los de que al acreedor que la obtenga sea preferido, en cuanto á los bienes anotados solamente, á los que tengan contra el mismo deudor otro crédito contraído con posterioridad á la anotación, doctrina

ésta que arranca de la recta interpretación dada al artículo 44 de la Legislación Hipotecaria.

4to.—Considerando: que siendo personal el crédito de Don Bernardo Camacho, y pudiendo sólo tener preferencia con respecto á otros créditos de Don Sergio Berenguer contraídos con posterioridad á la anotación que obtuvo, es evidente, que en ese caso no se halla Don Tomás Vélez y Vélez que adquirió el terreno embargado por Camacho, con anterioridad, á título de compra-venta, no habiendo hecho el Juez otra cosa que llenar la fórmula rit=uaria del otorgamiento de la escritura, que no quiso expontáneamente otorgar el vendedor, según el contrato consensual celebrado, y de que era ese título su consecuencia.

5to.—Considerando: que apoyado Don Bernardo Camacho en los derechos que le otorga una anotación, sienta en el debate el principio de que es tercero con respecto á Don Tomás Vélez y á Don Sergio Berenguer, cuando por derecho hipotecario la teoría del tercero se refiere á inscripciones ó anotaciones, con relación estas últimas á la de los créditos posteriores al primer crédito personal anotado, según los artículos 23, 25 y 44 de la Legislación Hipotecaria.

6to.—Considerando: que las costas se impondrán siempre á la parte cuyas pretensiones se hubieren totalmente desestimado, según la regla 63 de la Orden General número 118 serie de 1899.

Fallamos: que declarando con lugar la presente demanda de tercería de dominio establecida por Don Tomás Vélez, contra Don Bernardo Camacho y Don Sergio Berenguer, mandamos se alce el embargo trabado sobre las cien cuerdas de terreno embargadas por Don Bernardo Camacho, dejándolas á la libre disposición de Don Tomás Vélez y Vélez, y que se cancele la anotación preventiva, librándose el oportuno mandamiento por duplicado al Registrador de la Propiedad de San Germán, *condenando en costas á los demandados. Y notifíquese en forma legal al demandado rebelde Don Sergio Berenguer.*

. Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.—Arturo Aponte.—J. A. Erwin.—R. Roura."

*Resultando* que contra la anterior sentencia interpuso la representación de Don Bernardo Camacho recurso de apelación que le fué admitido libremente y en ambos efectos y que elevados los autos á esta Corte Suprema con citación y emplazamiento de las partes y personado solamente el apelante por medio del Abogado Don Emigdio

S. Ginorio, se dió al recurso la tramitación correspondiente y se señaló día para la vista que se celebró sin la concurrencia de las partes.

Abogado del apelante: *Sr. Ginorio (Emigdio S.)*

La parte apelada no compareció.

EL JUEZ ASOCIADO SR. FIGUERAS, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada, y

*Considerando* que consignados acertadamente en el tercer Considerando de la sentencia recurrida los efectos de la anotación de embargo practicada á instancia de Don Bernardo Camacho, no puede lastimar el derecho de dominio que en la finca objeto de la demanda de tercería adquirió Don Tomás Vélez y Vélez casi seis meses antes por virtud del contrato de compra-venta; doctrina que resulta además, armonizada con el principio "de que el primero en tiempo es mejor en derecho."

*Considerando* que el artículo 44 de la Ley Hipotecaria no está en contradicción con el 71 del mismo Cuerpo legal en su inciso primero, ni se desconoce su alcance en el caso concreto á qué corresponda aplicarlo, pero no ha llegado ese momento ni hay que considerar tampoco los demás incisos que se refieren á un orden de procedimiento ajeno por completo á la cuestión que se controvierte.

*Considerando* que al estudiar el contrato de compraventa celebrado el 18 de Septiembre de 1901, no puede traerse á consideración el artículo 1095 del Código Civil para deducir que el comprador y tercerista Vélez no adquirió entonces el derecho real sobre la finca por no habérsele entregado, pues aparte de que esa materia no ha sido discutida en el pleito, ni ha sido objeto de las pruebas, la cuestión que aquí hay que estudiar y resolver está circunscrita única y exclusivamente á los derechos que

tengan sobre la finca en litigio las personas que intervienen en esta tercería tal y como aparecen de los autos.

*Considerando* que siendo esto así hay que convenir en que la venta hecha por Don Sergio Berenguer á Don Tomás Vélez quedó perfeccionada y es obligatoria para ambos por haber convenido en la cosa objeto del contrato y en el precio, aunque aquélla no se hubiese entregado, como así lo establece el artículo 1450 del Código Civil.

*Considerando* que Camacho sólo tenía una acción personal sobre su deudor Berenguer y no habiendo adquirido derecho alguno real por la anotación del embargo, sino el expresado en el artículo 44 de la Ley Hipotecaria, no puede negar con eficacia, ni él, ni el vendedor, el derecho del comprador de disfrutar del dominio de la finca, y del de reivindicarla, que es lo que se pretende por medio de la presente tercería.

*Considerando* que estudiada así la cuestión planteada, no se desvirtúa el artículo 1095, ya citado, del Código Civil, pues aquí el vendedor de la cosa ya hemos visto que quedó obligado por el contrato de compra-venta y el acreedor que anotó el embargo no estuvo, ni pudo estar, en posesión de ella, para alegar en su favor derecho real de ninguna especie.

*Considerando* que la posición de Don Tomás Vélez y Vélez no hubiera mejorado por haber anotado preventivamente su demanda para obligar á Berenguer á otorgar la escritura de venta, porque entonces sólo ejercitó una acción personal y no podía aquella anotación, aunque se hubiera tomado, surtir efecto, por no estar comprendida en ninguno de los casos señalados en el artículo 42 de la Ley Hipotecaria.

*Considerando* que las costas deben imponerse á los demandados.

Vistas las disposiciones legales que en el fallo recurri-

do, y en éste, se citan, y las sentencias de esta Corte y las del Tribunal Supremo de España de 12 de Octubre de 1895, 19 de Febrero y 12 de Mayo de 1886.

*Fallamos* que debemos confirmar y confirmamos la sentencia que en primero de Abril de 1903 dictó la Corte de Mayagüez é imponemos las costas á los demandados.

Jueces concurrentes: Sres. Presidente Quiñones y Asociado Wolf.

Jueces disidentes: Sres. Hernández y MacLeary.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. HERNANDEZ.

Con fecha 10 de Febrero del año de 1902 Don Bernardo Camacho presentó escrito al Tribunal de Mayagüez solicitando fuera reconocida por Don Sergio Berenguer la firma que como suya aparecía en un pagaré otorgado á favor de Camacho el 15 de Marzo del año anterior por valor de quinientos dollars pagaderos el 31 de Agosto del mismo año; y despachada ejecución para el cobro de la referida suma, fué embargado en 7 de Marzo de 1902, como de la propiedad de Berenguer, un predio de terreno con cabida de cien cuerdas, ubicado en el barrio de "Boquerón", término municipal de Cabo-Rojo, de cuyo embargo se tomó anotación preventiva en el Registro de la Propiedad de San Germán con fecha 14 del propio Marzo.

En 15 de Enero de 1902 Don Tomás Vélez demandó en juicio verbal civil ante el Juzgado Municipal de Cabo-Rojo á Don Sergio Berenguer para que le otorgara escritura traslativa del dominio del terreno expresado, alegando para ello que Berenguer le había vendido ese terreno mediante documento privado, en 19 de Setiembre de 1901, por precio de doscientos dollars, de los que el vendedor confesó haber recibido ciento, habiéndose obligado el comprador á entregarle los cien dollars restantes en el acto de otorgarse la escritura de venta; y seguido el juicio por todos sus trámites, se dictó sentencia en primero de Febrero siguiente por la que fué condenado el demandado

Berenguer á que dentro de quinto día otorgara á favor de Vélez el documento público referente al contrato de compra-venta entre ellos celebrado, mediante la entrega por el demandante de los cien pesos oro que retenía en su poder como resto de los doscientos pesos de la misma moneda en que se verificó la enajenación del inmueble.

Don Sergio Berenguer apeló de dicha sentencia para el Tribunal de Distrito de Mayagüez, el que la confirmó por la suya de 23 de Mayo de 1902; y en su consecuencia el Juez Municipal de Cabo-Rojo, por rebeldía de Berenguer, otorgó en 18 de Agosto de dicho año, á favor de Vélez, la escritura pública correspondiente, que fué inscrita en el Registro de la Propiedad de San Germán en 22 del mismo Agosto.

Con tales antecedentes, Don Tomás Vélez, en 30 de Setiembre de 1902, presentó demanda de tercería de dominio ante la Corte de Mayagüez contra Don Bernardo Camacho y Don Sergio Berenguer, para que se declarara que el terreno embargado y sus frutos recolectados y pendientes pertenecen al demandante y deben quedar á su libre disposición, alzándose el embargo y cancelándose la anotación del mismo.

Don Bernardo Camacho se opuso á esa demanda y pidió se le absolviera de ella sin perjuicio del derecho que según el artículo 71 de la Ley Hipotecaria pueda ejercitar á su tiempo el tercerista, y la Corte de Mayagüez, por sentencia de 1o. de Abril de 1903, declaró con lugar la demanda de tercería, mandando alzar el embargo trabado sobre las cien cuerdas de terreno y que se cancele la anotación preventiva, cuya sentencia es objeto del recurso de apelación que por mayoría de votos ha decidido esta Corte Suprema confirmando dicha sentencia.

Como se ve, á la demanda de tercería ha servido de título la escritura de compra venta otorgada á favor de Don Tomás Vélez en 18 de Agosto de 1902 é inscrita en

el Registro de la Propiedad de San Germán, en 22 del mismo Agosto, mientras que el embargo de la finca cuestionada se había practicado á instancia de Camacho con anterioridad, ó sea en 7 de Marzo del mismo año, anotándose ese embargo en el Reigstro de la Propiedad de San Germán con fecha 14 de ese mes; por cuya razón es indudable que Vélez adquirió la finca, ya gravada con la anotación preventiva del embargo, como así se hizo constar en la inscripción del dominio de la finca á favor de Vélez, en consonancia con el artículo 71 de la Ley Hipotecaria que dice textualmente en su apartado primero: ''Los bienes inmueble ó derechos reales anotados podrán ser enajenados ó gravados; pero sin perjuicio del derecho de la persona á cuyo favor se haya hecho la anotación.''

Y no se diga que aunque la escritura de venta fué otorgada á favor de Vélez en 18 de Agosto de 1902, ya éste, desde el día 18 de Setiembre de 1901, ó sea con anterioridad al embargo de los terrenos, los había adquirido mediante contrato de compra-venta consignado en documento privado, pues ni ese documento, ni copia del mismo, han venido á los autos, en los que sólo hay referencias del mismo, ignorándose por tanto los términos en que estaba redactado, para poder apreciar su verdadero alcance y significación legal.

Empero, aún suponiendo que existiera un verdadero contrato de compra-venta celebrado por documento privado con anterioridad á la fecha en que ese contrato fué elevado á escritura pública, contrato perfeccionado entre el comprador y vendedor, y obligatorio para ambos, por haber convenido en la cosa objeto del contrato, según el artículo 1450 del Código Civil, como ese contrato tenía por objeto la trasmisión de un derecho real sobre el bien inmueble y debía constar en documento público, según el número 1o. del artículo 1280 del Código citado, sólo pudo dar lugar al ejercicio de una acción personal para que los contratantes pudieran compelerse recíprocamente á lle-

nar la formalidad del otorgamiento de la escritura prevenida por la ley, con sujeción al artículo 1279, escritura pública que, según el artículo 1462, hubiera equivalido á la entrega de la cosa objeto del contrato, que es la que origina el ejercicio de la acción real, propia del juicio de tercería de dominio.

Perfeccionado el contrato de compra-venta en la forma expresada, sin elevarlo á documento público, equivalente á la entrega de la cosa vendida, dicha entrega debió tener lugar poniendo la cosa en poder y posesión del comprador Don Tomás Vélez; y no habiéndose verificado esa entrega, Vélez no adquirió ningún derecho real sobre los terrenos vendidos, con arreglo á lo que dispone el artículo 1095 del Código Civil, siendo, por tanto, improcedente la demanda de tercería de dominio, según doctrina legal á que se ajustó esta Corte Suprema en Sentencia de 18 de Julio de 1901.

Que la entrega de los terrenos vendidos no tuvo lugar antes del otorgamiento de la escritura pública de venta á favor de Don Tomás Vélez, está consignado expresamente en la cláusula 6a. de aquella escritura qe dice así: "El comprador entrará en posesión de la finca que adquiere desde el otorgamiento de esta escritura", y lo convence, además, la diligencia de notificación del embargo que se entendió con Don Sergio Berenguer nombrado depositario del terreno embargado, sin la más mínima intervención de Don Tomás Vélez.

Y esa cuestión sobre entrega del terreno vendido debe discutirse para decidir en ley el presente recurso, pues aparte de que la Ley de la Asamblea Legislativa de 12 de Marzo de 1903, transformando el Tribunal Supremo de Casación en Corte de Apelación, autoriza á esta Corte para hacerlo así, tal discusión es necesaria para poder apreciar la procedencia ó improcedencia de la tercería de dominio, dado que la parte demandante estaba en el deber de traer al juicio todos los elementos que integran la ac-

ción de dominio, discusión tanto más admisible en el presente caso cuanto que, si por virtud del documento privado á que se alude, Don Tomás Vélez solo adquirió una acción personal. su situación legal es completamente distinta de la que le correspondería si hubiera adquirido una acción real.

Ni cabe sostener que los efectos de la escritura pública de venta otorgada en diez y ocho de Agosto de 1902 deben retrotraerse á fecha anterior á la del embargo, pues no habiéndose tomado en el Registro de la Propiedad anotación preventiva de derecho real alguno, á favor de Don Tomás Vélez, sobre los terrenos que son objeto del presente juicio, no puede favorecerle el artículo 70 de la Ley Hipotecaria.

Aceptamos que Camacho no adquirió derecho alguno real por la anotación del embargo; pero sostenemos que tampoco lo tenía Vélez en la fecha en que se practicó dicha diligencia; y careciendo, entonces, Vélez, de todo derecho real sobre la finca á que se refiere la tercería de dominio, es obvio que ésta no puede prosperar por cuanto Camacho y Vélez sólo tenían entonces acciones personales sobre Berenguer, y el segundo no podía reclamar derecho de dominio, ni siquiera de preferencia, respecto del primero.

Por las razones expuestas, el Juez que suscribe disiente de la opinión de la mayoría de este Tribunal, y de acuerdo con el Honorable Juez MacLeary opina que debe revocarse la sentencia apelada, absolviendo de la demanda á los demandados, con las costas del juicio, y del recurso, á cargo de Don Tomás Vélez.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. MACLEARY.

No pudiendo estar conforme con la mayoría del Tribunal respecto á los principios legales que rigen esta causa, disiento respetuosamente de la sentencia dictada en la

misma, y presento lo siguiente como mi voto particular.

Haré primeramente un breve bosquejo de los hechos consignados en los autos.

Esta demanda fué entablada ante el Tribunal de Distrito de Mayagüez, por Tomás Vélez y Vélez contra Bernardo Camacho y Sergio Berenguer y Acosta; y se dictó sentencia en la misma, á favor del demandante, el 1o. de Abril de 1903. El demandado Berenguer no compareció ante el Tribunal inferior, ni ante este Tribunal. El demandado Camacho contestó á las pretensiones del demandante, y al resultar la sentencia en su contra, apeló para ante esta Corte.

Los autos fueron presentados aquí en dos de Diciembre de 1903, y después de los procedimientos usuales, la causa fué sometida á la consideración del Tribunal, sin informe oral, el 25 de Noviembre de 1904. El abogado del apelante Camacho, presentó un alegato escrito en maquinilla; pero ningún abogado compareció ni presentó alegato alguno á nombre del apelado. En el Tribunal inferior, la causa fué decidida por una mayoría de dos contra uno, formulándose por el Juez especial un voto particular á favor de Camacho, á que hace referencia su abogado, y que forma parte del alegato de este último.

Los hechos en que está basado este litigio, pueden relatarse por su orden cronológico, como sigue:

En 15 de Marzo de 1901, Sergio Berenguer expidió un pagaré por $500, á favor de Bernardo Camacho, y pagadero el 31 de Agosto del mismo año.

En 8 de Septiembre de 1901, Tomás Vélez compró á Sergio Berenguer una extensión de terreno de 100 cuerdas, sita en el barrio de Boquerón, por el precio de $200, oro Americano, pagando $100 al contado, y dejando $100 sin pagar. Al efectuarse la venta, no se otorgó por las partes escritura pública, sino solamente un contrato privado de compra-venta; cuyo contrato consta en un documento privado que no se halla unido á los autos.

El 15 de Enero de 1902, Vélez entabló demanda contra Berenguer, en el Juzgado Municipal de Cabo-Rojo, tratando de obligar á dicho Berenguer, á que le otorgara escritura de traspaso de dicha extensión de terreno. En este asunto el Juzgado Municipal dictó sentencia en 1o. de Febrero del mismo año, requiriendo al demandado para que otorgara la escritura de traspaso dentro de un término fijado, al efectuarse el pago de los $100, saldo del precio de compra, que Vélez había reconocido como debido y no pagado.

En 10 de Febrero de 1902, Camacho entabló demanda ejecutiva contra Berenguer, con motivo del pagaré de $500, y el 7 de Marzo embargó la extensión de terreno mencionada en la presente, de cuyo embargo se hizo una anotación preventiva en el Registro de la Propiedad el 14 del mismo mes.

Mientras tanto, la causa de Vélez contra Berenguer, para obligar á éste á otorgar á aquél la escritura (de traspaso), había sido apelada, y en 23 de Mayo de 1902, el Tribunal de Distrito de Mayagüez confirmó la sentencia.

El 18 de Agosto de 1902, con motivo de la rebeldía de Berenguer, y de su omisión de cumplir con la sentencia del Tribunal, mediante el otorgamiento de la escritura de traspaso, el Juez Municipal de Cabo-Rojo hizo el traspaso del predio de terreno á Vélez, por $200, y recibió la mitad restante del precio de compra, depositado en el Juzgado, y otorgó la escritura de traspaso (ó traslación de dominio), en cumplimiento de la sentencia dictada.

En 28 de Agosto de 1902, se entabló esta demanda, que es de tercería de dominio de dicho predio de terreno, de cien cuerdas, suplicándose en la petición que se declare que el terreno y sus frutos pertenecen al demandante, y deben quedar á su libre disposición; que se alce el embargo referido, y que se disponga que se cancele la anotación preventiva que del mismo se había hecho en el Registro de la Propiedad.

El demandado Berenguer no compareció ante el Tribunal de Distrito, y fué declarado en rebeldía. Camacho compareció, y en su contestación suplicó que se desestimase la demanda, y que se dictase por el Tribunal una orden, alzando la suspensión del procedimiento de apremio seguido contra Berenguer, con imposición de las costas, etc.

Los documentos antedichos, á saber:

(a) Una copia certificada de la sentencia dictada por el Juzgado Municipal de Cabo-Rojo, en 1o. de Febrero de 1902;

(b) Un certificado del Registrador de la Propiedad de San Germán, conteniendo la anotación preventiva del embargo, y la inscripción de la escritura de venta otorgada á Vélez, por el Juez Municipal; y también,

(c) Una copia certificada de la sentencia dictada por el Tribunal de Distrito de Mayagüez ,confirmando la del Juzgado Municipal de Cabo-Rojo;

fueron debidamente presentados como pruebas, por las respectivas partes, y los hechos demostrados por los mismos, no fueron disputados.

Se señaló día para la vista, y el 1o. de Abril de 1903, se vió y decidió la causa á favor del demandante, por mayoría de votos, y se redactó y dictó, en debida forma, la sentencia.

Dicha sentencia es como sigue:

"En la ciudad de Mayagüez á primero de Abril de 1903. . Visto en juicio oral y público este pleito civil seguido entre partes de la una como demandante, Don Tomás Vélez y Vélez, propietario, vecino de Cabo-Rojo, representado y defendido por el Letrado Don José de Diego, y como demandados, Don Bernardo Camacho, vecino de esta ciudad defendido por el Abogado Don Francisco Pelegrí, y Don Sergio Berenguer y Acosta, industrial, vecino de Cabo-Rojo, en rebeldía en estos autos, sobre tercería de dominio de un cuerpo de terreno á pasto.—1o.—Resultando: que el ocho de Septiembre de mil novecientos uno, Don Tomás Vélez y Vélez compró á Don Sergio Berenguer y Acosta, en la suma de doscientos pesos oro, cien cuerdas de terreno radicadas en el barrio de Boquerón de dicho término Municipal, colindantes por el Norte con el Salitral perteneciente á Don Alberto del

Toro; por el Este con la finca de la Sucesión de Don Federico Vélez; por el Sud con terrenos de Don Rafael Blanes y por el Oeste con terrenos de Don Carlos Bofrey Palmer; y por no haberle otorgado la escritura pública demandó ante el Juzgado Municipal de Cabo-Rojo, Vélez á Berenguer, para que así lo hiciera, el quince de Enero de mil novecientos dos.—Y seguido el juicio por sus trámites, dictó sentencia el Tribunal Municipal el primero de Febrero del propio año, condenando al demandado á que otorgase en el término que se le fijó, el documento público referente al contrato de compra-venta de terreno entre ellos celebrado, mediante la entrega por el demandante de los cien pesos oro que tenía en su poder como resto de los doscientos pesos en que se verificó la enajenación del inmueble; y cuyó fallo fué confirmado, con las costas por esta Corte de Distrito el veinte y tres de Mayo de aquel año.—2o. Resultando: que Don Bernardo Camacho en diligencias preparatorias de ejecución contra Don Sergio Berenguer, solicitó embargo preventivo sobre cien cuerdas de terreno radicadas en el barrio de Boquerón, que pertenecían á su deudor, el Sr. Berenguer, y pidió que se tomase anotación preventiva del embargo en el Registro de la Propiedad de San Germán, como así se hizo el catorce de Marzo del próximo pasado año.—3o.—Resultando: que el diez y ocho de Agosto del propio año mil novecientos dos, el Juez Municipal de Cabo-Rojo Don Tomás Marini y Ramírez, en rebeldía Don Sergio Berenguer y Acosta, vendió la finca aludida á Don Tomás Vélez y Vélez, por el precio de doscientos dollars, de los cuales ciento tenía recibidos el Señor Berenguer según aparecía de los autos de juicio verbal, y los cien dollars restantes los consignaba en poder del Juez el comprador, todo lo cual se verificaba en cumplimiento de las sentencias dictadas por los Tribunales.—4o.—Resultando: que fundado en lo expuesto, Don Tomás Vélez y Vélez, citando los artículos 348, 349 y 353 y siguientes, 1450 y 2215 del Código Civil, las sentencias del Tribunal Supremo de España, de 13 de Abril de 1880, y 11 de Marzo de 1884 los artículos 920 y concordantes, 1533 y 1541 de la Ley de Enjuiciamiento Civil y la Regla 63 de la Orden No. 118, serie de 1899, solicitó que en definitiva, previos los debidos trámites, se declarase sin lugar la tercería de dominio interpuesta, y en su consecuencia, que los bienes y sus frutos recolectados y pendientes pertenecen al demandante, y deben quedar á su libre disposición alzándose el embargo referido, y disponiéndose que se cancele en el Registro de la Propiedad la anotación correspondinte.—5o.—Resultando: que Don Bernardo Camacho pidió que se desestimase la demanda de tercería, declarándose sin lugar, absolviéndose de la misma, y mandando que

se alzase la suspensión del procedimiento de apremio seguido contra Don Sergio Berenguer, con imposición de las costas al tercerista Don Tomás Vélez y Vélez, á Don Sergio Berenguer, en el caso de que impugnara la contestación, y para ello alegó que el día 15 de Marzo de mil novecientos uno, Don Sergio Berenguer otorgó á favor de Don Bernardo Camacho un documento privado en que confesaba deberle la cantidad de 500 dollars, y prometía pagárselos en 31 de Agosto del mismo año, cosa que no cumplió, sino que anduvo en tratos con Don Tomás Vélez y Vélez, para venderle una finca de cien cuerdas, únicos bienes inmuebles que poseía, y con cuya enagenación se hubiera quedado insolvente con perjuicio de su acreedor, Don Bernardo Camacho; pero por temor quizás, Berenguer, á las responsabilidades en que pudiera incurrir, no otorgó escritura de venta de sus cien cuerdas de terrenos á Don Tomás Vélez y Vélez, permitiendo que éste le demandara, y coadyuvó así á que el Tribunal le condenara á otorgar escritura de venta de dicho terreno, la que aparece haberse otorgado de oficio el día 18 de Agosto último; mas al tener conocimiento Don Bernardo Camacho de las negociaciones de Vélez con Berenguer, determinó gestionar el cobro de su crédito por la vía judicial, y al efecto preparó ejecución, y despachada esta se embargaron á su instancia las cien cuerdas de terreno radicadas en el barrio de Boquerón del término de Cabo-Rojo que pertenecen á su deudor, el señor Berenguer anotándose en el Registro de la Propiedad de San Germán, el 14 de Marzo de este año el embargo practicado sobre las citadas cien cuerdas de terreno que pertenecían á Sergio Berenguer, y estaban inscritas á su nombre en el Registro; y cinco meses después, ó sea el día 22 de Agosto próximo pasado, se inscribió á favor de Don Tomás Vélez, sin perjuicio de la referida anotación preventiva, la escritura de las *mismas cien cuerdas de terreno, citando como puntos de su derecho* el No. 2o. del Artículo 42 de la Ley Hipotecaria, los artículos 23, 25 y 43 del propio Cuerpo legal; los artículos 606 y 1280 del antiguo Código Civil, y, á más el artículo 71 de dicha Ley Hipotecaria.—6o. Resultando: que señalado día para una comparecencia, después de haber sido acusada la rebeldía á Don Sergio Berenguer, y de habérsele notificado personalmente, las partes propusieron las pruebas que estimaron procedente á su derecho, la cual admitió el Tribunal.—7o. Resultando: que se trajo á este pleito certificación de la sentencia dictada el 1o. de Febrero del pasado en el Juzgado Municipal de Cabo-Rojo, certificación del Registro de la Propiedad de San Germán en que aparece la anotación del embargo pedido por Don Bernardo Camacho, y la inscripción á favor de Don Tomás Vélez y Vé.

lez de la escritura de venta que le hizo el Juez Municipal de dicho pueblo en rebeldía de Don Sergio Berenguer y Acosta; y señalado día para el juicio oral, los Letrados de las partes alegaron lo que creyeron oportuno, trayéndose luego para mejor proveer certificación de la sentencia dictada por este Tribunal en el juicio seguido por Don Tomás Vélez y Vélez contra Don Sergio Berenguer y Acosta, sobre otorgamiento de escritura pública, y se votó luego la sentencia que recayó por mayoría.—8o.—Resultando: que en el presente juicio se han cumplido todas las prescripciones de la ley.—Visto, siendo Juez Instructor para la redacción de esta sentencia el Señor Juez Presidente Don Arturo Aponte y Rodríguez.—1o.—Considerando: que siendo las anotaciones preventivas unos asientos que se hacen en el Registro de la Propiedad para asegurar provisionalmente un derecho en los casos y con las formalidades que determina el artículo 42 de la Ley Hipotecaria y 91 y 92 de su Reglamento Orgánico, claro es, que si entre esos casos se encuentra el que con arreglo á derecho obtuviera á su favor mandamiento de embargo que se haya hecho efectivo en bienes raíces del deudor, se desprende natural y lógicamente que es condición para que surta efecto legal, que los bienes sobre que se constituya la anotación, no sean de un tercero, como lo es en este pleito Don Tomás Vélez y Vélez respecto á Don Sergio Berenguer y Don Bernardo Camacho, sino del deudor mismo, para entonces gozar de preferencia, con relación á otros créditos contraídos con posterioridad á dicha anotación.—2o.—Considerando: que Don Bernardo Camacho solicitó embargo preventivo contra bienes de Don Sergio Berenguer, anotándose el constituído sobre cien cuerdas de tierra el 14 de Marzo del año próximo pasado en cuya época ya habían sido vendidas por Don Sergio Berenguer esas tierras á Don Tomás Vélez, siendo objeto de reclamación judicial en dos distintas instancias, resolviéndose en ambas que otorgara el vendedor la escritura al comprador, que lo es en este caso el tercerista,; sin que pueda afirmarse que faltó el requisito de la escritura para el contrato, porque es bien sabido que la compra-venta como consensual, se perfecciona por el consentimiento de las partes en el precio y en la cosa, y los preceptos legales que se refieren al otorgamiento de escrituras públicas para la trasmisión del dominio de cosas inmuebles, no varían la naturaleza de dicho contrato, ni establecen una condición esencial del mismo, sino una forma en el interés público, independiente de la voluntad de los contratantes, que quedan en su consecuencia recíprocamente obligados á prestarse el otorgamiento de la escritura pública, según sentencia del Tribunal Supremo de España de 24 de

Noviembre de 1894; esto aparte de que la demanda de Don Tomás Vélez contra Don Sergio Berenguer se entabló con anterioridad al embargo y con anterioridad también dictó el Juez Municipal la sentencia condenando al otorgamiento de la escritura, la cual no se ejecutorió en virtud de la apelación deducida para ante esta Corte, que confirmó la del Juez inferior, y esas actuaciones tienen el carácter de documentos públicos, según el Artículo 1216 del Código Civil antiguo, en relación con el No. 7 del Artículo 595 del Código de Enjuiciamiento Civil.—3o.—Considerando: que según sentencias del Tribunal Supremo de Puerto Rico, de 1 de Noviembre de 1892, y 26 de Febrero de este año, la anotación preventiva de un embargo, acordada por providencia judicial y dirigida únicamente á garantir las consecuencias del juicio, no crea ni declara derecho alguno, ni altera tampoco la naturaleza de las obligaciones, ni puede convertir en real é hipotecaria la acción que carezca de este carácter, y no produce otros efetos que los de que el acreedor que la obtenga sea preferido, en cuanto á los bienes anotados solamente, á los que tengan contra el mismo deudor·otro crédito contraido con posterioridad á la anotación doctrina ésta que arranca de la recta interpretación dada al Artículo 44 de la legislación hipotecaria.—4o.—Considerando: que siendo personal el crédito de Don Bernardo Camacho y pudiendo sólo tener preferencia con respecto á otros acreedores de Don Sergio Berenguer, contraídos con posterioridad á la anotación que obtuvo, es evidente que en ese caso no se halla Don Tomás Vélez que adquirió el terreno embargado por Camacho, con anterioridad, á título de compra-venta, no habiendo hecho el Juez otra cosa que llenar la fórmula rituaria del otorgamiento de la escritura que no quiso expontáneamente otorgar el vendedor según el contrato consensual celebrado, y de que era ese título su consecuencia.—5o.—Considerando, que apoyado Don Bernardo Camacho en los derechos que le otorga una anotación, sienta en el debate el principio de que es tercero con respecto á Don Tomás Vélez y á Don Sergio Berenguer, cuando por derecho hipotecario la teoría del tercero se refiere á inscripciones ó anotaciones, con relación éstas últimas de los créditos posteriores al primer crédito personal anotado, según los artículos 23, 25 y 44 de la Legislación Hipotecaria.—6o.—Considerando: que las costas se impondrán siempre á la parte cuyas pretensiones se hubieran totalmente desestimado, según la Regla 63 de la Orden General No. 118, serie de 1899.—Fallamos: que declarando con lugar la presente demanda de tercería de dominio establecida por Don Tomás Vélez contra Don Bernardo Camacho y Don Sergio Berenguer, mandamos se alce el embargo trabado sobre las cien cuer-

das de terreno embargadas por Don Bernardo Camacho, dejándolas á la libre disposición de Don Tomás Vélez y Vélez, y que se cancele la anotación preventiva, librándose el oportuno mandamiento por duplicado al Registrador de la Propiedad de San Germán, condenando en costas á los demandados; y notifíquese en forma legal al demandado rebelde Don Sergio Berenguer.—Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.''

Habiéndose dictado esta sentencia solamente por una mayoría de los Jueces del Tribunal, el Juez especial, que formó la minoría, formuló voto particular, el cual es como sigue:

''En la ciudad de Mayagüez, á primero de Abril de mil novecientos tres, el Juez Asociado Suplente que suscribe: Vistos los autos sobre tercería de dominio seguidos por Don Tomás Vélez y Vélez, como demandante, y Don Bernardo Camacho y Don Sergio Berenguer, como demandados, en rebeldía este último; formula su voto particular en la sentencia recaída en dicho pleito en los siguientes términos: Aceptando los fundamentos de hecho del fallo que precede, con excepción del primero y en su lugar, Resultando: que Don Tomás Vélez y Vélez demandó ante el Juzgado Municipal de Cabo-Rojo á Don Sergio Berenguer, para que le otorgase escritura de cien cuerdas de terreno radicadas en el barrio de Boquerón de dicho término Municipal; y que afirmaba Vélez haberle vendido el demandado; y seguido el juicio por todos sus trámites dictó sentencia aquel Juzgado el día primero de Febrero de mil novecientos dos, condenando á Don Sergio Berenguer á que otorgase dicha escritura contra cuya sentencia interpuso éste recurso de apelación para ante este Tribunal de Distrito, el que confirmó aquélla, con fecha 23 de Mayo del mismo año.—Considerando: que no habiendo sido firme el fallo que condenó á Berenguer á otorgar la escritura de venta de la finca referida, y que admitida por consiguiente la existencia del contrato, hasta el día 23 de Mayo de 1902, en que fué dictada la de esta Corte de Distrito, que tiene carácter de ejecutoria, no ha podido ni puede afirmarse que dicha finca perteneciese á Vélez, quien hasta esa fecha sólo tuvo un derecho litigioso que no se hizo efectivo en tanto no recayó declaración judicial firme sobre el mismo.—Considerando: que habiendo obtenido Don Bernardo Camacho embargo preventivo sobre la referida finca, en diligencias preparatorias de ejecución, seguidas contra Don Sergio Berenguer, y anotado preventivamente su embargo en el Registro de la Propiedad de

San Germán desde el día 14 de Marzo de 1902, es decir: con anterioridad á la sentencia de esta Corte de Distrito, dictada en aquel juicio verbal, es evidente que la finca embargada pertenecía aún á Berenguer, y ha podido legalmente ser embargada por Camacho como de la propiedad de aquel.—Considerando: que el Código Civil, en el Artículo 1227 del reformado, y 1280 del antiguo, establece que los contratos que tienen por fin la creación, trasmisión, modificación ó extinción de los derechos reales sobre inmuebles deben hacerse constar en escritura pública de cuyos preceptos se deduce sin esfuerzo, que para que la compra y venta referida pudiera ser eficaz, se necesitaba la existencia del documento público: por cuya razón sólo después de declarado el derecho por sentencia firme, pudo hacerlo valer eficazmente Vélez contra Camacho. — Considerando: que las costas deben imponerse siempre á la parte cuyas pretensiones sean totalmente desestimadas; *Es mi voto* que declarando sin lugar la demanda de tercería establecida por Don Tomás Vélez, se absuelva de la misma á los demandados con imposición de las costas al tercerista."

Contra la referida sentencia dictada en su contra, interpuso el demandado Camacho recurso de apelación para ante esta Corte, el día 20 de Abril de 1903, y se elevaron los autos originales oportunamente á este Tribunal.

Al fundar dicho recurso de apelación, el abogado del apelante presenta las siguientes objeciones contra la sentencia dictada por el Tribunal de Distrito de Mayagüez, el primero de Abril de 1903.

Primero.—Que el contrato de venta estipulado entre Vélez y Berenguer, el 8 de Septiembre de 1901, era un documento privado y no una escritura pública de venta, y que no puede surtir efecto alguno contra la reclamación del tercero, Don Bernardo Camacho. En apoyo de esto, cita el artículo 1195 del Código Civil Revisado, y el 27 de la Ley Hipotecaria.

Segundo.—Que siendo la venta del 18 de Septiembre de 1901, un contrato de traslación de dominio de un bien inmueble, debió hacerse constar en documento público, de acuerdo con el artículo 1247 del Código Civil Revisado, y con los preceptos de la Ley Hipotecaria.

Tercero.—Que aunque la anotación preventiva en el Registro de la Propiedad no convierte en real el derecho personal del acreedor, sin embargo estando constituídos igualmente por documentos privados los créditos del demandante y del demandado, que son el apelado y el apelante, respectivamente, y siendo el del apelante anterior en seis meses al del apelado, en tanto que por lo demás son iguales, debe prevalecer el documento más antiguo. Puesto que el título de dominio poseído por Vélez, fué inscrito el 26 de Agosto de 1902, ó sea cinco meses después de la anotación preventiva, del embargo trabado por Camacho, dicho título no podía perjudicar los derechos de éste último.

Cuarto.—Que la venta efectuada el 18 de Septiembre de 1901, entre Berenguer y Vélez, debe considerarse como fraudulenta y nula porque no se había depositado, por Berenguer, en efectivo, en un establecimiento bancario ó en otro cualquiera á satisfacción de su acreedor Camacho, una suma suficiente para pagar el importe total de su obligación, ni había retenido en su poder bienes bastantes con que cubrir el importe de sus deudas. En apoyo de lo expuesto, el apelante hace referencia á la Orden Judicial de 6 de Marzo de 1899, y á la aclaratoria de 20 del mismo mes y año.

Quinto.—Habiendo el apelado adquirido durante el litigio, un bien inmueble gravado, y habiéndosele notificado el gravámen, podrá solamente librar el bien de dicho gravamen, pagando la cantidad consignada en la anotación preventiva para principal, intereses y costas; y si no lo hiciere, se procederá á cancelar la inscripción de su dominio. Hasta el 23 de Mayo de 1902, en cuya fecha se confirmó por el Tribunal de Distrito de Mayagüez, la sentencia dictada por el Juzgado Municipal, Vélez tenía sobre la propiedad en cuestión, solamente un derecho contencioso, y éste no llegó á ser efectivo sino cuando en la

fecha indicada se dictó por el Tribunal de Distrito, la resolución judicial definitiva con respecto al mismo.

Sexto.—El precepto de la Ley por el cual se determina que el derecho del que ha anotado un embargo, se puede utilizar sólo contra los acreedores posteriores, alude indudablemente á los derechos nacidos después de la anotación, y no á los que, como el del apelante, sean anteriores á la anotación—por lo tanto el embargo trabado por el apelante, debe prevalecer sobre el traspaso de dominio hecho á favor del apelado.

Séptimo.—La regla que dispone que las costas deben imponerse á aquella parte, cuyas pretensiones sean totalmente desestimadas, debe aplicarse al apelado, puesto que no puede haber nada más temerario que la demanda de tercería entablada por el mismo.

Estas proposiciones no las consideraré estrictamente por el orden en que han sido presentadas, sino por el orden que parece lógico y natural.

En primer lugar se insiste en que la venta efectuada por Berenguer á Vélez debe considerarse como fraudulenta y nula; porque el primero había omitido constituir un depósito de dinero para cubrir la deuda, ó retener en su poder bienes suficientes para pagar la misma, según lo exige la Orden Judicial de 6 de Marzo de 1899, y las enmiendas á la misma.

Hemos considerado anteriormente en varias causas—entre las que se encuentra la del Banco Español contra Bolívar et al., fallada en 23 de Mayo de 1904,—el efecto de esta Orden Judicial, y la hemos aplicado en todas sus partes; pero en el presente caso, no es aplicable dicha Orden por no haberse presentado en el juicio prueba alguna que demuestre que Berenguer, no tenía otros bienes que los de que se trata en este pleito, suficientes para pagar no solamente esta deuda, sino cualesquiera otras contraídas por él. Por correcta que sea la proposición legal, tal como ha sido presentada por el apelante, no existiendo en

los autos prueba alguna que la sostenga y la haga aplicable al presente caso, no puede tener aquí efecto alguno en la revocación de la sentencia.

En segundo lugar, si Vélez tiene derechos sobre la propiedad controvertida con exclusión absoluta de Camacho, es con motivo de la demanda entablada por él contra Berenguer, para que se le otorgase escritura de traslación de dominio de la propiedad, y el subsiguiente traspaso de esta propiedad efectuado por el Juez Municipal, de acuerdo con la sentencia dictada en la referida causa; y para determinar exactamente la preferencia de derechos de que se trata entre las partes, se debe fijar la atención de las fechas en que se dedujo la demanda y en que se efectuó la entrega del documento otorgado de acuerdo con la sentencia dictada; y en la fecha en que se hizo la anotación preventiva del embargo en el Registro de la Propiedad. Fué el 8 de Septiembre de 1901, que Vélez compró el predio de terreno á Berenguer; y en 15 de Enero de 1902 dedujo la demanda para compeler al otorgamiento de la escritura de traspaso, dictándose sentencia por el Juzgado Municipal el primero de Febrero del mismo año, de conformidad con la demanda de Vélez, cuya sentencia fué confirmada en apelación, el día veinte y tres del mes de Mayo; pero al establecer su demanda, Vélez omitió exigir la anotación preventiva de la misma, en el Registro de la Propiedad; y en este último no constaba nada que demostrase cuáles eran los derechos que había adquirido sobre el terreno, con anterioridad á la época en que Camacho presentó su demanda ejecutiva contra Berenguer, por el pagaré de quinientos dollars, trabando embargo de dicho terreno y haciéndolo inscribir por medio de una anotación preventiva en el Registro de la Propiedad, el catorce de Marzo de 1902, por lo que obtuvo prioridad en la inscripción, sobre Vélez, que procedió sin haber tomado anotación preventiva.

Si Vélez, al entablar su demanda contra Berenguer, pa-

ra obligar á éste á la entrega de la escritura pública, de acuerdo con el documento privado que se había otorgado anteriormente, y por el cual se le traspasó el terreno que le había vendido Berenguer, hubiese hecho constar la anotación preventiva, dicha anotación indudablemente hubiese sido anterior á la del embargo trabado á solicitud de Camacho, y sus derechos preferentes sobre el embargo hubieran sido asegurados; pero él omitió hacer esto, y por consiguiente la máxima de Ley, que dice: "Las leyes favorecen á los diligentes, y no á los que se duermen sobre sus derechos", debe aplicarse á este caso. Broom's Legal Maxims, 892; Black's Law Dictionary, 1222.

La mera entrega por Vélez al Juez Municipal, del documento privado, y la deducción de la demanda basada en dicho documento, para compeler al otorgamiento del título de dominio, sin hacerse anotación preventiva en el Registro de la Propiedad, no puede servir de notificación á Camacho, ni privarle del beneficio de su embargo que se había trabado en debida forma y con la anotación correspondiente en el Registro de la Propiedad.

En tercer lugar, aparte de todo esto, después de haber examinado cuidadosamente los artículos 1195 y 1247 del Código Civil Revisado, los artículos 27, 44 y 71; y los párrafos 1, 2, 3 y 4 del 42 de la Ley Hipotecaria, debemos llegar á la conclusión de que un traspaso de bienes raíces no puede efectuarse sólo por la entrega de un documento privado para la compra y venta de los mismos, sino que son necesarios el otorgamiento y la entrega de un documento público, ó de una escritura de traslación de dominio, antes de que pueda producirse efecto legal alguno respecto de tercero con el traspaso de dichos bienes; ó de que pueda conseguirse prioridad á favor del comprador sobre un embargo ya anotado en el Registro de la Propiedad, en la fecha en que el contrato privado se eleva á escritura pública.

Siendo esto claro y evidente en el sentido en que yo in-

terpreto la ley, los derechos de las respectivas partes, Vélez y Camacho, con respecto al terreno controvertido, deben contarse y tomar efecto, en uno de los casos, desde la época en que Camacho hizo constar su anotación preventiva, es decir, desde el 17 de Marzo de 1902; y en el otro caso, desde la época en que Vélez recibió su escritura de traspaso definitivo, del Juez Municipal de Cabo-Rojo, y la hizo inscribir en el Registro de la Propiedad, es decir, desde el 18 de Agosto de 1902 ó sea más de cinco meses después.

No es necesario considerar más detenidamente las otras cuestiones presentadas en la vista de esta causa, por ser los puntos alegados fundamentales y suficientes para basar en ellos la decisión de toda la causa; y dicha decisión deberá tener por resultado la revocación de la sentencia dictada por la Corte inferior.

Siendo tal el estado de las cosas entre las partes, y de la ley aplicable al caso, Vélez debe tomar el título á la propiedad que compró á Berenguer, con sujeción al derecho de retención que Camacho tiene sobre la misma, por virtud de su embargo; y antes de que su título pueda ser perfecto, debe pagar la deuda asegurada que existe á favor de Camacho.

Puesto que éstas son mis ideas con respecto al asunto de que se trata en la causa que ante Nos pende, debe, según mi convicción, revocarse la sentencia dictada por el Tribunal de Distrito de Mayagüez, en 1o. de Abril de 1903, y dictarse por dicho Tribunal otra, á favor de Camacho, según se ha indicado en la presente.